[Civ. No. 10389.   First Appellate District, Division One.—June 21, 1937.]

THE PEOPLE, Appellant, v. ONE FORD V8 COACH, etc., et al., Defendants; UNIVERSAL CREDIT COMPANY (a Corporation), Respondent.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Appellant.

O'Brien, Dibert & Acton for Respondent.

KNIGHT, J.—The state instituted this proceeding for the forfeiture of a Ford automobile, seized in San Jose by the division of narcotic enforcement, while it was being used unlawfully to transport narcotics. (Stats. 1935, p. 2203.) The registered owner of the vehicle, named Dixon, did not appear, but the Universal Credit Company, assignee of the legal owner, filed a verified answer setting up a lien created by a conditional sales contract under which the vehicle was purchased. At the conclusion of the hearing the court made findings and entered judgment for the forfeiture of said vehicle, subject, however, to the lien of the Universal Credit Company for the unpaid balance of the purchase price, amounting to $437. From said judgment the state appeals.

Subdivisions (e) and (f) of section 15 of said narcotic act provide that "the claimant of any right, title, or interest in said automobile or other vehicle may prove his lien, mortgage, or conditional sales contract to be *bona fide* and that such right, title or interest was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser and without any knowledge that the automobile or other vehicle was being, or was to be, used for the purpose charged", whereupon the state's right of forfeiture shall be subject to such lien, etc.

In the present proceeding respondent's counsel stipulated that at the time of the seizure the car was being used in violation of said act; and counsel for the state stipulated that respondent's conditional sales contract was *bona fide* and that at no time did respondent have any knowledge that said car was to be used for any unlawful purpose. There remained then for determination the single issue of whether respondent complied with that provision of the narcotic act

requiring a reasonable investigation to be made of the moral responsibility, character and reputation of the purchaser.

In this regard the record shows that respondent's counsel presented and read to the court the report of an investigation respondent caused to be made through the Dun & Bradstreet agency as to Dixon's moral responsibility, character and reputation. The state makes no claim that the investigation so conducted did not constitute a compliance with the statutory requirement, but it contends that the written report thereof and the circumstances attending the making of the same may not be considered on this appeal as evidence supporting the trial court's affirmative finding on this issue because said written report was not actually introduced in evidence nor was any testimony under oath given in connection therewith.

For the following reasons we are unable to sustain the above contention: Preliminary to the reading of the report respondent's counsel stated that the entire transaction relating to the sale and delivery of the car to Dixon, and the execution, delivery and assignment of the conditional sales contract, took place in Salt Lake City, Utah, and that consequently respondent would be put to a large expense if it were compelled to bring its employees to this state to testify merely that respondent requested the investigation which resulted in the report he was then presenting. He then went on to say that Dixon purchased the car in October, 1935, from Fred A. Carleson, Inc., a dealer in Salt Lake City, by making a down payment of $60 in cash, turning in a used car at a valuation of $205.76 and executing a conditional sales contract whereby he agreed to pay the balance in monthly instalments of $39.80; that thereupon the dealer sold and assigned said contract to respondent, a national finance concern having a branch in that city; that after making seven monthly payments on said car Dixon surreptitiously drove the car to California, and in July, 1936, it was seized in San Jose. Counsel then related the activities of respondent in directing the investigation of Dixon's moral responsibility, character and reputation through the Dun & Bradstreet agency, following which he proceeded to read the written report of the investigation so conducted. The report was in the form of a questionnaire and recited among other things that Dixon was married; that his business address

was 253 South State Street, Salt Lake; that he was a tile setter by trade and had been so for ten years, earning about $1150 a year; that he paid his bills in cash and that his character and general reputation were good. Continuing, the report read: "Applicant is a tile setter and usually works for himself. He is said to be very expert at his trade and in spite of depressed conditions has been able to make a living for himself and family. He lives at the Rex Hotel, and has resided there for several months; he specializes in selling a fancy tile work for large buildings, theaters, and so forth. Has a good job coming up on the new Salsbury Building. He recently bought a new Ford car, which he is buying on contract. Travels from job to job on the road, but prospects are the work he has in Salt Lake City will keep him busy for several months. Makes good money while employed, but past three years has not had continuous steady work." On the reverse side of the questionnaire was a purchaser's statement wherein Dixon stated his occupation, residence, income and gave other information as to his bank accounts, etc. Respondent's counsel then produced a copy of the ledger card. showing that Dixon made seven monthly payments, after which, so counsel stated, Dixon "absconded with the car" to California.

When counsel finished reading said report and concluded his statement of facts in connection therewith, counsel for the state inquired whether respondent was "going to put on any evidence", stating that the provisions of the narcotic act imposed upon a lien claimant the burden of proving the issue in question. Replying, respondent's counsel referred to the statement of facts he had made, saying that the same were based on his own knowledge; that all that could be done if he brought witnesses from Salt Lake City would be to have them testify that respondent caused said investigation to be made by Dun & Bradstreet; that he himself could testify that the same was made, and that under the circumstances he felt that his statement should be taken as evidence. And then, after some further discussion relating to the requirement of the statute, counsel for the state said he would submit the matter.

It is well settled that in determining the question of the sufficiency of the evidence to sustain a trial court's decision, the appellate court will consider all proper evidence

embraced in the record, including incompetent evidence admitted without objection; that the question of its competency is not before the court where it is admitted without objection, and that failure to object precludes the right subsequently to complain thereof (2 Cal. Jur. 804); furthermore, that incompetent evidence admitted without objection is legally sufficient to establish a fact (*Mercantile Trust Co.* v. *Sunset etc. Co.*, 176 Cal. 461–466 [168 Pac. 1037]), and is likewise sufficient to support a finding based thereon. (*Powers* v. *Board of Public Works*, 216 Cal. 546–552 [15 Pac. (2d) 156].) ██ Here the written report of the investigation was presented and read in open court as part of respondent's case, without any objection being made thereto on the part of the state, and as so read was taken down by the phonographic reporter and is now embodied in and made part of the record on appeal; moreover, no motion was ever made in the trial court to strike or exclude the contents of said report or any portion thereof from the record. We are of the opinion, therefore, that under the legal rules above set forth governing a reviewing court in the determination of a question of the sufficiency of the evidence to sustain a trial court's finding, we have not the right to disregard that portion of the record on appeal embodying said written report, notwithstanding that an objection thereto in the trial court as to its competency would have excluded the same from the record; and such being the case it cannot be said that the trial court's affirmative finding on this issue is wanting in evidentiary support.

██ Furthermore, section 4½ of article VI of the state Constitution provides that no judgment shall be set aside on the ground of the improper admission of evidence unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. The proceeding provided for by the narcotic act authorizing the seizure and forfeiture of automobiles used in violation of said act is summary in character and the state in effect concedes that if duly admitted in evidence after proper introductory proof, said written report of the investigation conducted on behalf of respondent would be legally sufficient to establish compliance with the statutory requirement. It would seem, therefore, that in any event the situation presented is one

that calls for the application of the foregoing constitutional provision.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 21, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 19, 1937.