[Civ. No. 11206.   First Appellate District, Division One.—November 20, 1940.]

THE PEOPLE, Appellant, v. ONE 1939 PLYMOUTH 6 COUPE, Defendant; BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Respondent.

560

Earl Warren, Attorney-General, and J. Albert Hutchinson, Deputy Attorney-General, for Appellant.

Louis Ferrari, G. D. Schilling and D. Bianco for Respondent.

KNIGHT, J.—The state appeals from a portion of a judgment entered in a proceeding brought by the state under the authority of the State Narcotic Act for the forfeiture of a 1939 Plymouth coupe automobile, sold under a conditional sales contract and seized for an alleged violation of the provisions of said act. The principal contention made by the state is that the evidence is insufficient to sustain the findings and the judgment.

The coupe was sold in Oroville, Butte County, on November 15, 1938, by W. C. Lortz, a local dealer, to Austin L. Abbott, a resident of that city for many years. A used car was turned in as a down payment at an agreed valuation of $372,

and the balance of the purchase price was made payable in twenty-four successive monthly installments of $27.26 each. The Oroville branch of the Bank of America National Trust and Savings Association financed the sale, drew the conditional sales contract, took an assignment thereof from Lortz, and was named as the legal owner in the certificate of registration. The coupe was seized on December 12, 1938, in Alameda County by a local deputy sheriff shortly after midnight, while it was parked alongside of the main Hayward-Niles highway just outside of Hayward. All of the lights of the coupe, including the interior dome light, were lit, and Abbott was the sole occupant thereof. He was preparing a solution of morphine, and was apparently about to inject it into his arm with a hypodermic needle attached to an improvised "dripper" when the officer, whose presence was unobserved by Abbott, opened the door of the coupe and placed him under arrest. A small quantity of powdered morphine was exposed on the seat of the coupe, and a little later, when Abbott was searched in Hayward, a small portion of opium was found on his person. He told the officers he had purchased the drugs in Oakland. A more thorough search of the coupe revealed nothing incriminating therein.

The State Narcotic Act provides that "*Any automobile or other vehicle used or intended to be used to conceal, convey, carry, or transport any of the drugs mentioned in section 1 of this act,* and any automobile or vehicle in which any of the drugs mentioned in section 1 of this act are unlawfully possessed by an occupant thereof, shall be forfeited to the State of California . . . " (Italics ours); and as shown by the notice of seizure filed by the state, the present forfeiture proceeding was based on the clause of the act above italicized. Abbott did not appear, and his interest was declared forfeited. The bank, however, filed a verified answer, and as a result of the hearing the trial court found in conformity with the denials and allegations of the answer, first, that at the time of the seizure the coupe was not being used for the particular unlawful purpose specified in the notice of seizure; and secondly, that in any event the rights of the bank were created after a reasonable investigation of the moral responsibility, character and reputation of Abbott. Therefore, in accordance with the provisions of the act the judgment decreed that the interests of the bank were not forfeited, and

directed a sale of the coupe in the manner provided by the statute, and that from the proceeds of the sale the state first pay to the bank the amount due under its conditional sales contract. (Sec. 15, State Narcotic Act; Stats. 1935, p. 2203; Deering's Gen. Laws, Act 5323; now Health and Safety Code, secs. 11610–11629.)

Much of the argument on appeal has been devoted to the question of whether at the time of the seizure the coupe was being used for the particular unlawful purpose charged in the notice of seizure. It is evident, however, that even though the state's contention in this regard be sustained and it be held as a matter of law and contrary to the trial court's findings that the coupe was being so used, the judgment must nevertheless be affirmed for the reason that the factual showing made by the bank amply supports the inference drawn therefrom by the trial court that the bank's investigation of Abbott prior to the creation of its interest in the coupe was legally sufficient to meet the requirements of the statute.

As stated in Corpus Juris (vol. 25, p. 1172), a statute imposing a forfeiture should be construed strictly, and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation. The courts will usually give such a construction to statutes providing for forfeiture as will be consistent with justice and the dictates of natural reason.

Here the legislature in framing the forfeiture statute made no attempt to prescribe how or to what extent the "moral responsibility, character and reputation" of a purchaser shall be investigated. All that is required is a "reasonable" investigation; and manifestly the question as to whether the investigation has been reasonable is one of fact for the trial court's determination. For obvious reasons no fixed rule can be adopted for the measurement of all cases. The decision in each must depend necessarily upon its own peculiar circumstances; and as in all other cases wherein an issue of fact is controlling, it is beyond the power of the reviewing courts to interfere with the trial court's decision if the record discloses any evidentiary support therefor.

In the present case the record discloses three main factors upon which the trial court apparently founded its conclusion on this issue: First, personal knowledge on the part of Floyd L. Humphreys, the manager of the bank who

authorized the financing of the sale, of the character and reputation of Abbott, acquired through a personal and business acquaintanceship with Abbott and the members of his immediate family which fully justified the conviction that Abbott was a person of moral responsibility. In this regard Humphreys testified in part that he had lived in Oroville, which has a population of about 6,000, for upwards of thirty-five years; that for thirty years he had been employed in this same bank, and for the last twelve years as manager; that the Abbott family was one of the old, well known and highly respected families of that community; that one of the brothers was a doctor, another a deputy sheriff and the night jailor of Butte County, and the third an employee in another branch of the Bank of America; that Abbott also had a sister whose daughter was the wife of a former sheriff of the county. Continuing, Humphreys testified that his acquaintanceship with Austin L. Abbott extended over a period of ten years, and with other members of his family more than twenty years; that all members of the family carried substantial bank deposits, and that up to two years ago Abbott also carried an account with the bank; that he knew that Abbott had worked for a lumber company in that vicinity; that he had never heard anything derogatory of his character, or that he had ever been in any kind of trouble. Secondly, in conformity with the business rule of the bank, Abbott as the prospective purchaser was interrogated personally by an official of the bank having charge of that department of the bank's business, and pertinent information was obtained bearing upon Abbott's moral responsibility, character and reputation, which was reduced to writing by said official in the form of a "purchaser's statement", and signed by Abbott. Third, certain persons named in said statement as references were "contacted" and "they all gave him a good send-off".

As opposed to the above showing, the state offered no contra evidence whatever to prove that Abbott's reputation or character were not good or that he was not a person of moral responsibility. On cross-examination Humphreys testified that he "had heard" that Abbott was a "card dealer", and Lortz testified that Abbott had told him he was a "card dealer", but just what was meant by the use of that term was not shown; much less was it established, as

asserted in appellant's brief, that Abbott was a "professional gambler" or that he was connected with any unlawful gambling enterprises. Moreover, it can hardly be said that the use of the term "card dealer" would imply that such a person was a drug addict.

Appellant claims that Abbott gave false answers to the questions in the "purchaser's statement" relating to his employment with the Swayne Lumber Company. All of the answers therein were typed in by the bank official, and the trial court evidently construed the answers to mean that Abbott had worked for said lumber company for the period therein stated; and when the statement is read as a whole it cannot be said that such construction is not justified. As so construed, the statement was not shown to be false.

The factual situations of the two cases strongly relied upon by appellant in support of its position are entirely different from the one here involved. In *People* v. *One Harley Davidson Motorcycle*, 5 Cal. (2d) 188 [53 Pac. (2d) 970], the vendor sold a motorcycle to a Chinese boy named Lee, who gave as references a seventeen year old Chinese boy, and the name of a Chinese firm by whom Lee was employed. The transaction took place in San Francisco. As to the facts the court said: "The claimant sent an assistant to the place of business of this firm, and ascertained (so far as the record shows) only the fact that Lee was there employed. *No other inquiries were made or information sought. . . . It does not appear that the claimant knew or had any knowledge of Lee before he appeared at claimant's place of business and sought to buy a motorcycle.*" (Italics ours.) Contrary to the view taken by the trial court, it was held that under the circumstances stated it could not be said that one inquiry at Lee's place of employment to ascertain if he was there employed measures up to the reasonable investigation of the responsibility, character and reputation of the offender required by the act. In the second case, *People* v. *One 1938 Buick Sedan*, 39 Cal. App. (2d) 42 [102 Pac. (2d) 447], the appellant bank in making its investigation obtained reports from a credit association relating to the purchaser, and in connection therewith the opinion states: "The branch manager [of the bank] was questioned as to whether or not the credit association reports would show any arrest or conviction for crimes. His answer was that he had obtained

these reports for the past fourteen years and that 'plenty' of the reports did show arrests and criminal convictions for crimes which came to the attention of the association through its members . . . Respondent [the state] then showed by the evidence that Speed [the purchaser] had, prior to the sale of the car in question, been convicted of the crime of grand larceny and served a term in the United States prison at Leavenworth upon such conviction; that he was a panderer and his wife was a prostitute; that he had had numerous arrests for vagrancy, the particular acts of vagrancy being that he was a panderer and a lewd and dissolute person; that he was reputed to have been engaged in the narcotic traffic prior to the time of his arrest and the seizure of the instant automobile.'' The trial court held that the appellant bank was not entitled to priority under its conditional sales contract, and the judgment was affirmed. It would seem to require no discussion to differentiate either of those cases from the present one. Other cases are to be found wherein it is held that the statutory requirement is not met where, the purchaser being unknown to the vendor, the inquiry is extended only as to the financial responsibility of the purchaser to pay, and no effort is made to investigate his moral responsibility, character and reputation. But clearly this is not such a case.

As already stated, the question involved is one of fact, and therefore, since the trial court's finding is not without evidentiary support, the judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 20, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 16, 1941.