[Civ. No. 11752. First Dist., Div. Two. Dec. 18, 1941.]

THE PEOPLE, Appellant, v. ONE 1940 CHRYSLER CONVERTIBLE COUPE, ENGINE No. C25-20972, Defendant; PACIFIC FINANCE CORPORATION OF CALIFORNIA (a Corporation), Respondent.

Earl Warren, Attorney General, and Dennis Hession, Deputy Attorney General, for Appellant.

Treadwell & Laughlin and A. Thatcher Cook for Respondent.

STURTEVANT, J.—On May 22, 1940, under a conditional sales contract, James W. McAlister, Inc., sold John Gamble a Chrysler Windsor Convertible coupé, the car in suit. The vendor assigned its contract to Pacific Finance Corporation.

On August 17, 1940, the plaintiff commenced this action to forfeit said car. The plaintiff named the car as defendant. John Gamble was served with notice and appeared and answered. Pacific Finance Corporation was also served with notice and appeared and filed a separate answer. The trial court made findings in favor of the last named defendant and against John Gamble. From the judgment entered on said findings the plaintiff appealed.

To sustain the judgment the plaintiff asserts that the Pacific Finance Corporation was bound to prove the matters set forth in section 11620 of the Health and Safety Code. That section provides: "The claimant of any right, title, or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be *bona fide* and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged." But the plaintiff contends that the record does not show that Pacific Finance Corporation did so. That is, the plaintiff claims Pacific Finance Corporation did not prove that it made " . . . a reasonable investigation of the moral responsibility, character, and reputation of the purchaser. . . . " The plaintiff concedes the trial court made a finding (Finding No. IX) in which it found the facts on each of said elements in favor of Pacific Finance Corporation, and that that finding is presumed to be correct, but, the plaintiff contends, such finding was not supported by any evidence whatever. If that contention is sound the judgment must be reversed. But if there was evidence supporting each element of fact contained in said finding the judgment must be affirmed. We think the situation last stated is shown by the record. The provision of the statute specifically applicable

is, " . . . after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser. . . . " The matter before this court is first one of statutory construction and secondly the evidence applicable to the finding. Under ordinary rules of grammar the statute means the same as though it were written " . . . after a reasonable investigation of the moral responsibility, moral character, and moral reputation of the purchaser. . . . "

The ordinary rules of grammar should be followed if by applying them such interpretation does not lead to an absurdity. (23 Cal. Jur. 732, "Statutes," sec. 110.) Words will be construed according to the context and the approved usage of the language. (Civil Code, sec. 13.) And in construing a statute due force and effect should, if possible, be given to every word. (Code Civ. Proc., sec. 1858.)

Applying these rules, "moral responsibility," among other things, is an attribute of one who keeps his word. By the same token "moral character" is an attribute, among others, of one who does not commit wrongful or criminal acts. And "moral reputation" is, among other things, that which others say as to one's morals. Finally, "morals" means, among other things, "distinguishing between right and wrong" (Webster). As so understood a bank or other creditor may not be said to be unconcerned in each of said factors.

When Gamble applied to James W. McAlister, Inc., offering to buy an automobile, he was examined by John H. Shepard, an experienced credit man. The latter prepared a questionnaire and took down in writing the answers. Gamble signed it. Later Shepard turned over the papers to James Hammill. He was an investigator for Pacific Finance Corporation. He received the papers from Shepard about the middle of May, that is about the date of the conditional sales contract. After Hammill received the papers from Shepard the former proceeded to check the information contained in said papers. Gamble had stated that he had had dealings with the Bank of America in Fresno. Hammill called on the credit manager of the bank at that place. Hammill testified the credit manager "told me the information they had as to their investigation was satisfactory. They had no derogatory information about him; he had been making payments satisfactorily; also about a furniture account, dis-

counted by the Josephine Furniture Company; that too he had been paying. From their previous investigation there developed no derogatory information about the man's reputation in the community. I asked them if they had any derogatory information about him which I considered the same thing as asking about his general character and responsibility. After talking to the Bank of America in Fresno I decided that this man was of (sic) a good moral responsibility, character and reputation, and was a good credit risk for my company and decided to make the loan." On cross-examination the following occurred: "Mr. Hession: Q. They stated to you they had made an investigation previously about John Gamble? A. He said the information they developed. I assumed they had made investigation as the bank checks the same as we did." No objection was made to the *assumption* of the witness and no motion to strike out was made. In another part of the cross-examination the following occurred: "Mr. Hession: Q. The Bank of America at Fresno, the man you talked to there, stated they did not make any investigation of Gamble, but their records disclosed nothing derogatory? A. I didn't ask if they made an investigation, I *assumed* they did. They are stiffer than we are about the manner in which they conduct it." Again there was no objection to the *assumption* of the witness and no motion to strike. Neither assumption was broken down by any other evidence.

In one of the replies made to Shepard, Gamble had stated that he owned some race horses and exhibited a certificate issued by the Horse Racing Board. "Mr. Cook: Q. Did that mean anything to you? A. I knew the racers always secured a permit, and check on the reputation and character of the individual before they give out the certificates."

As to what examinations banks in general make when an application is made to them for a loan secured by personal property and what examinations are made by the Horse Racing Board before it gives out certificates, this court is not informed, nor is it informed of what the above mentioned institutions do in that behalf. However, it was part of Hammill's business to be informed on such matters. There are at least intimations in the evidence that he was informed as to the nature and extent of the examinations made by such institutions. It follows that we may not say as a matter of

law that the finding that the Pacific Finance Corporation made an "investigation of the moral responsibility, character, and reputation of" Gamble was not sustained by the evidence. The facts in the case at bar are not similar to the facts in *People* v. *One 1939 Buick 8 Coupe*, 43 Cal. App. (2d) 411 [110 Pac. (2d) 1013]. In that case the bank's investigation consisted of a written report. It was solely a financial report.

 Finally the trial court made a finding that such investigation was "reasonable." That finding also may not be disturbed unless there was no substantial evidence to support it. As recited above Shepard presented to Gamble a questionnaire and took down in writing his answers. Those answers showed the latter's home address, his occupation (operating a service station), the names and addresses of the members of his family, and also facts regarding his assets. The questionnaire also showed local references. Moreover Gamble orally stated to Shepard other facts and exhibited other documents including the certificate of the Horse Racing Board. Many of those facts were checked by Hammill. Under such circumstances we may not say as a matter of law that the investigation was not reasonable.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.