[Civ. No. 14133.   Second Dist., Div. One.   Mar. 23, 1944.]

THE PEOPLE, Appellant, v. ONE 1941 CADILLAC CLUB COUPE, Defendant; PACIFIC FINANCE CORPORATION OF CALIFORNIA (a Corporation), Respondent.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Appellant.

Williamson, Hoge & Judson, Gene G. Curry and Edward M. Patterson for Respondent.

WHITE, J.—Plaintiff commenced proceedings to forfeit the defendant automobile on the ground that it was used unlawfully to transport narcotics (secs. 11610-11629, Health & Safety Code—formerly known as the State Narcotic Act). Pursuant to the code provisions, the following were notified of the proceeding: Gilbert B. Gonzales, the registered owner, and Pacific Finance Corporation of California, the legal owner. Gilbert B. Gonzales, the registered owner, filed an answer in which he denied that the vehicle was used unlawfully to conceal, convey, carry or transport narcotics. By its answer the legal owner, Pacific Finance Corporation of California, set up its interest under a conditional sales contract upon which there was a balance due in the sum of $780, and further alleging that its interest under said conditional sales contract was created after reasonable investigation by such corporation of the moral responsibility, character and reputation of the registered owner.

With reference to the seizure of said vehicle, the record discloses that on August 23, 1942, while the automobile was, with the consent of the registered owner, under the sole control and in the temporary possession of one Andrew Pekara, certain narcotic enforcement officers made a search of the vehicle and in a depression in the seat thereof, not visible to one entering the driver's compartment, found a single marihuana cigarette. Hence, the attempted forfeiture not only of the registered owner's interest but of the legal owner's as well.

The case was tried under the provisions of the aforesaid Health & Safety Code. The portion of the statute involved

is found in section 11620 of such code and reads as follows:

"The claimant of any right, title or interest in the vehicle may prove his lien, mortgage or conditional sales contract to be bona fide and that his right, title or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged."

At the trial the State stipulated (1) that the conditional sales contract under which the Pacific Finance Corporation of California claimed an interest in said automobile was bona fide; (2) that said corporation's right, title and interest under said contract was created without any knowledge that the vehicle was being, or to be, used for the purpose charged. The issue here presented is therefore narrowed down to the question of whether the right, title or interest of said finance company was created after a reasonable investigation by it of the moral responsibility, character and reputation of the purchaser. The trial court found that "said vehicle was used unlawfully to transport narcotics, to-wit, marihuana, and was seized by the Division of Narcotic Enforcement of the State of California on or about August 23, 1942, at the time of the arrest of Andrew Pekara, who had the specific consent of the registered owner (Gilbert B. Gonzales) to drive said vehicle;" also, "that the conditional sales contract, right, title and interest of the Pacific Finance Corporation of California arose in good faith and for a valuable consideration, and was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser, and without any knowledge that said vehicle was being or was to be used for any unlawful purpose; . . . that the amount due to Pacific Finance Corporation of California upon its conditional sales contract is the sum of $780.00 . . . (which) is less than the value of said vehicle."

This appeal is by the State from the judgment rendered which forfeited to the State of California the interest of the registered owner, Gilbert B. Gonzales, in and to said vehicle; ordered the automobile sold at public auction and from the proceeds of the sale directed that the sum of $780 with interest at 10 per cent from December 8, 1942, be paid to respondent corporation.

As grounds for reversal appellant urges "that the finding of the court that the right, title and interest of the Pacific

Finance Corporation 'was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser' is not supported by the evidence.''

The claim that the evidence is insufficient to sustain the finding that a reasonable investigation of the moral character of the owner was made, is totally without merit.

The requirements of the foregoing provision are highly penal and impose a burden of a most extraordinary nature on a lawful and useful business transaction, the like of which is unknown elsewhere in the law. Any attempt, therefore, to enforce a forfeiture under such circumstances, imposes a corresponding duty on the courts to scan the record with meticulous care, to the end that no injustice may result from such action. (25 C.J. 1172.) And in that connection, all doubts must necessarily be resolved in favor of the innocent claimant. No rule is more firmly grounded in our law than the one which declares that neither courts of law nor of equity look with favor upon statutes which impose penalties or exact forfeitures. Therefore, every intendment and presumption is against one who seeks to enforce the penalty or forfeiture created by such a statute. (*Savings & Loan Society* v. *McKoon,* 120 Cal. 177, 179 [52 P. 305].)

Section 11610 of the Health and Safety Code relating to forfeitures of vehicles for violations of the State Narcotic Law provides as follows: ''A vehicle used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed, or in which any narcotic is unlawfully possessed by an occupant thereof, shall be forfeited to the State.''

To transport means to carry or convey from one place to another. And it must clearly appear that the vehicle was being used for such a purpose. The incidental discovery of a single marihuana cigarette in a vehicle is not sufficient to establish the fact that the vehicle was 'being used *to transport* narcotics. The forfeiture provisions of the Health & Safety Code are designed to aid in the suppression of the traffic in narcotics. There is no evidence in the record tending to prove, or that even suggests, that the automobile in question was being used for such a purpose. If the attempted forfeiture is based on the balance of the aforesaid provision, viz.: ''or in which any narcotic is unlawfully kept, deposited or concealed, or in which any narcotic is unlawfully

possessed by an occupant thereof'', then it must clearly appear that either the legal or equitable owner of the vehicle, as the case may be, who is seeking to protect his interest therein, was an aider and abettor in such unlawful conduct, or in other words, *particeps criminis*. Furthermore, the statement that when an attack is made upon a judgment on the ground that it is unsupported by the evidence, the power of reviewing courts is limited to a determination of whether there is any substantial evidence, contradicted or uncontradicted, which will sustain the judgment rendered, is supported by legion of authority. The record herein shows that on or about June 8, 1942, an automobile dealer named Lee Evans sold the vehicle here in question to respondent Gilbert B. Gonzales on a conditional sales contract. On June 9, 1942, in the usual and ordinary course of business, respondent Pacific Finance Corporation purchased the contract from Evans. It was stipulated that the vehicle had an approximate value of $1,200 at the time of its seizure and that there was then owing to the finance company on such contract a balance of $780. When respondent Gonzales purchased the automobile he filled in and signed the usual purchaser's statement which bears date of June 10, 1942. In such statement he declared that he was married, had one dependent, gave his address and the name of his landlord. As a trade reference he gave the name of an automobile dealer from whom he had previously purchased a motor vehicle. He furnished the names of three individuals as personal references. He stated that he was employed by the California Shipbuilding Corporation for whom he had worked over a period of four months as a sheet metal worker; that his income was $200 per month and that prior to his shipyard employment he had worked as a bartender for John Blandino, whose name was also given as a personal reference.

The credit investigator for respondent finance corporation whose duty it was to make an investigation in connection with conditional sales contracts testified that she contacted the California Shipbuilding Corporation by telephone but was advised that ''they verified by mail'' and required the badge number of the employee when inquiry was made. This information was not available to her. She testified that she telephoned to the purchaser's landlord and ''asked him how long Mr. Gonzales had lived there, and he said for a year, and I asked him how he paid his rent; it was paid promptly,

and asked him if he knew anything against him and he said everything was all right, nothing against him." The witness also made inquiry of the landlord as to where Mr. Gonzales was employed and was informed that he worked at the California Shipbuilding Corporation. At the trial it was definitely established by the testimony of two employees of the shipbuilding corporation that Gonzales was employed by said company at the time here in question. Thus we have a situation wherein the requirements of the law as to both the financial status and the moral responsibility of the purchaser were met. The investigation embraced not only financial consideration in connection with the purchaser, but also included inquiry as to how such purchaser was regarded by his landlord and whether his moral conduct in the community in which he resided was good or bad. It needs no citation of authority for the statement that the landlord's reply to the effect that he knew nothing against Mr. Gonzales amounted to evidence of good reputation.

Appellant places strong reliance on the case of *People* v. *One 1939 Buick 8 Coupe,* 43 Cal.App.2d 411, 416 [110 P.2d 1013].) In that case the court, in holding that the question of the scope and reasonableness of the required investigation is primarily one of fact but should meet certain legal requirements, stated: "It would seem that a *bona fide* investigation should, among other essentials, reveal the home address of the prospect, his employer, either past or present, the source of his income, his family or social connections, and as in the case here of a stranger, some inquiry as to his prior location and his standing in that community." The inquiry in the case at bar meets the test just stated and upon which appellant so strongly relies.

We are impressed that in the consideration of cases arising out of the statute here under consideration the interpretation to be given the investigation required therein to be made must turn on the circumstances of the individual case, and that the decisions passing upon the facts deemed sufficient or insufficient to sustain a judgment can be of little assistance other than to announce the definition of what constitutes a "reasonable investigation of the moral responsibility, character and reputation" of the purchaser. For instance, it has been held that an investigation sufficiently complies with the law when but a single reference was interviewed. (*People* v. *One 1399 Buick Coupe,* 56 Cal.App.2d

163 [132 P.2d 308] ; *People* v. *One 1940 Chrysler Convertible Coupe,* 48 Cal.App.2d 546 [120 P.2d 117]; *People* v. *One Plymouth Sedan,* 21 Cal.App.2d 715 [69 P.2d 1011].)

Neither a maximum nor a minimum of investigation, required to be made by a lender, is set forth in the statute. Nor is the extent to which the investigation as to the moral responsibility, character and reputation of a purchaser shall go, prescribed by the law. Under the facts disclosed in the instant proceeding, we are persuaded that it must be held that the statements made to the finance corporation by the purchaser's landlord as to his financial responsibility, his reputation in the community, and as to his employment, corroborating as they did the statements made by the purchaser in his purchaser's statement, were such as to satisfy a reasonably prudent person of the purchaser's good moral character. That is all the law requires. It should also be borne in mind that the vehicle was not seized because of any illegal or unlawful conduct on the part of the purchaser in connection therewith, and the record is barren of any evidence connecting Mr. Gonzales, the purchaser, with the alleged illicit transportation of narcotics other than the fact that he innocently permitted Pekara to borrow the automobile.

The question of whether the investigation made by respondent finance corporation as to the moral responsibility of the purchaser was a reasonable one, being essentially one of fact, simply because more than one inference might reasonably be drawn from the evidence does not authorize us to disturb the finding thereon made by the duly constituted trier of facts "if the record discloses any substantial evidentiary support therefor." (*People* v. *One 1939 Buick Coupe,* 56 Cal.App.2d 163, 167 [132 P.2d 308].) In the case with which we are here concerned the evidence relative to the inquiry made satisfies the requirement of the act that a reasonable investigation be made and fully supports the trial court's finding upon the subject.

The cases of *People* v. *One 1937 Packard 6 Touring Sedan,* 50 Cal.App.2d 761 [123 P.2d 900] ; *People* v. *One Packard 6 Touring Sedan,* 26 Cal.App.2d 150 [79 P.2d 130]; *People* v. *One 1939 Buick 8 Coupe,* 43 Cal.App.2d 411 [110 P.2d 1013] ; *People* v. *One Harley-Davidson Motorcycle,* 5 Cal.2d 188 [53 P.2d 970] ; *People* v. *One 1938 Buick Sedan,* 39 Cal. App.2d 42 [102 P.2d 447], relied upon by appellant, are distinguishable from the case at bar in the factual situations

presented, while the investigation made by respondent finance corporation herein discloses the obtaining of as much or more information concerning the purchaser of the vehicle, and the making of an investigation equally as reasonable as was held sufficient in the following cases: *People* v. *One Plymouth Sedan,* 21 Cal.App.2d 715 [69 P.2d 1011]; *People* v. *One Ford V-8 Coach,* 21 Cal.App.2d 445 [69 P.2d 473]; *People* v. *One 1939 Plymouth 6 Coupe,* 41 Cal.App.2d 559 [107 P.2d 266]; *People* v. *One 1933 Buick Sedan,* 43 Cal.App.2d 482 [111 P.2d 378]; *People* v. *One 1940 Chrysler Convertible Coupe,* 48 Cal.App.2d 546 [120 P.2d 117]; *People* v. *One 1939 Buick Coupe,* 56 Cal.App.2d 163 [132 P.2d 308].

For the reasons herein stated, the judgment is affirmed.

Doran, J., concurred.

YORK, P. J.—I dissent. The so-called investigation, in my opinion, did not constitute any investigation whatsoever. At least, the evidence as shown by the record did not in anywise tend to prove the moral responsibility, character or reputation of the purchaser.

A petition for a rehearing was denied April 21, 1944, and the opinion was modified to read as above. York, P. J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied May 18, 1944. Gibson, C. J., Curtis, J., and Traynor, J., voted for a hearing.