[Civ. No. 19397.   Second Dist., Div. One.   Mar. 2, 1953.]

THE PEOPLE, Respondent, v. ONE 1950 STUDEBAKER COMMANDER CONVERTIBLE COUPE, Defendant; RANCHO MOTORS, INC. (a Corporation), Appellant.

Sydney J. Dunitz for Appellant.

Edmund G. Brown, Attorney General, and Ellis Peter Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—In this proceeding for the forfeiture to the state of an automobile seized while it was being used for the transportation of narcotics (Health & Saf. Code, § 11610 et seq.), the sole question presented is that of the sufficiency of the evidence to support the judgment rendered after trial before the court. By its findings and judgment the court determined that the appellant did not make a "reasonable investigation of the moral responsibility, character and reputation of the purchaser," as required by section 11620 of the Health and Safety Code.

The motor vehicle was seized while it was in the possession of Guy A. Ross, the registered owner. Appellant was the "legal" owner, having sold the vehicle to Ross upon a conditional sales contract. Appellant contends: "The finding that appellant did not make a reasonable investigation of the moral responsibility, character and reputation of the purchaser is not supported by the evidence." Section 11620 of the Health and Safety Code provides: "The claimant of any

right, title, or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged.''

■ In this type of case, as in other cases, it is the province of the trier of fact to weigh the evidence. As was said in *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556, 561 [201 P.2d 402], ''The trier of fact 'is the exclusive judge of the credibility of the witnesses, and while a witness is presumed to speak the truth, this presumption may be repelled by the manner in which he testifies, by the character of his testimony, or by his motives or obvious interest. (Code Civ. Proc., § 1847; see cases collected, 27 Cal.Jur. § 154, p. 179.) Provided the trier of the facts does not act arbitrarily he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. . . .' (Emphasis added.) (Citing cases.)''

The evidence on behalf of appellant was given by William Pearson, a coowner of Pearson Motors, and Charles Burton, the manager of a finance company which purchased conditional sales contracts from Pearson Motors. In February, 1951, it appears from the testimony, Guy Ross, then in Navy uniform, appeared at the used car lot of appellant and sought to buy a 1941 Buick. He filled out an application form, listing as a personal reference one Lee Nandel, of Santa Monica, California. The application was forwarded to Associated Finance Company, which was in the business of purchasing conditional sales contracts. Mr. Burton, the manager of the company, testified that he inquired of Nandel whether Ross drank, ''ran around, and so on and so forth.'' Mr. Burton's knowledge of Nandel was that he had been a satisfactory customer and was steadily employed. Mr. Burton then advised Pearson Motors that his company would require that Mr. Nandel be a cosigner on the conditional sales contract of Ross. The sale was completed when Nandel signed the contract with Ross.

About a year after this transaction Ross returned to appellant's car lot, stating that he had been discharged from the Navy, (displaying his honorable discharge) and wished to buy another car. He planned to go to Colorado for a little while and then return to California to live and work. He

made a phone call to his parents in Denver, Colorado, and, according to Mr. Pearson, "They said it was all right, if he wanted to come back to California to live, . . . ." No further investigation was made at this time, but the purchase of the 1950 Studebaker was then consummated.

Appellant, in attacking the court's finding, presents the following version of the evidence:

"1. William Pearson, president of appellant, met Ross about February, 1951, approximately a year prior to appellant's sale of the Studebaker to Ross, in connection with the sale of a Buick to Ross. At that time Ross was a resident of Denver and was in the United States Navy. William Pearson personally saw Ross in Navy uniform and saw his Navy I.D. card.

"2. Prior to the sale of the Buick, William Pearson required Ross to disclose his address, how long there, his credit references and personal references.

"3. Prior to the sale of said Buick to Ross, and in connection therewith, the president of appellant contacted a local resident named Lee Nandel, whom he had known for three years, with whose family he had dealt, who was on the finance company's books and who was known by said finance company to be employed with a steady income and to have good character. Said local resident then told William Pearson that Ross was of moral character, that he thought enough of Ross to guarantee the contract, and he did guarantee the contract.

"4. Ross' application for the purchase of the Buick was turned over to a finance company for checking and was approved by it for credit purposes, and regarding Ross' moral character. Said finance company interviewed Lee Nandel regarding Ross. The findings and approval of the finance company were communicated by the finance company to William Pearson, the president of appellant.

"5. Prior to the sale of the Buick to Ross, and in connection therewith, appellant submitted Ross' application containing all information to an insurance company and insurance was issued. William Pearson testified that insurance companies check service men very carefully.

"6. The sale of the Studebaker involved herein was made after Ross had satisfactorily made payments to appellant on the Buick for over a period of approximately a year. During that time William Pearson saw Ross many times.

"7. When appellant sold said Studebaker to Ross, Ross had

recently been discharged from the United States Navy and appellant's president had seen Ross' honorable discharge from the United States Navy.

"8. Before appellant sold the Studebaker to Ross, such sale was approved by Ross' parents by long distance telephone between Los Angeles and Denver."

Appellant further directs attention to the cases of *People v. One 1940 Chrysler Conv. Coupe*, 48 Cal.App.2d 546 [120 P.2d 117], and *People v. One 1939 Buick*, 56 Cal.App.2d 163 [132 P.2d 308], wherein the courts have stated that the claimant need establish only that the investigation made was such as to satisfy a reasonably prudent person of the purchaser's good moral character. Appellant also relies upon *People v. One 1941 Cadillac Club Coupe*, 63 Cal.App.2d 418 [147 P.2d 49], wherein the court pointed out that the provisions of section 11620 of the Health and Safety Code are highly penal, impose an extraordinary burden on a lawful transaction, and that an attempt to enforce a forfeiture imposes a duty on the court to scan the record with meticulous care, to the end that no injustice may result, resolving all doubts in favor of the innocent claimant. Appellant asserts that the investigation in the instant case was more thorough than that made in the last-cited case, with reference to which this court said:

"Neither a maximum nor a minimum of investigation, required to be made by a lender, is set forth in the statute. Nor is the extent to which the investigation as to the moral responsibility, character and reputation of a purchaser shall go, prescribed by the law. Under the facts disclosed in the instant proceeding, we are persuaded that it must be held that the statements made to the finance corporation by the purchaser's landlord as to his financial responsibility, his reputation in the community, and as to his employment, corroborating as they did the statements made by the purchaser in his purchaser's statement, were such as to satisfy a reasonably prudent person of the purchaser's good moral character. That is all the law requires."

As pointed out by respondent, however, all three cases relied upon by appellant stand for the legal principle earlier adverted to, that the decision of the trier of fact is controlling if supported by any substantial evidence. In each of the three cited cases the trial court found that the lien-claimant had made a sufficient investigation. In *People v. One 1941 Cadillac Club Coupe, supra*, in addition to the language above

quoted, this court stated (p. 423) that ''the interpretation to be given the investigation required therein to be made must turn on the circumstances of the individual case.''

In *People* v. *One 1940 Buick 8 Sedan,* 70 Cal.App.2d 542, 548 [161 P.2d 264], the court laid down four principles as being definitely settled:

1. The defense that the investigation required by the statute has been made is an affirmative defense, and the burden of proof on the issue rests with the claimant.

2. The question as to whether a proper investigation has been made is one of fact and is to be tested by the legal standards ordinarily applied to such fact questions.

3. The statute does not prescribe the maximum or minimum of the investigation that must be made. It requires a ''reasonable'' investigation of the factors involved. What is reasonable must be governed by the facts of each case.

4. An investigation into the financial standing or the credit rating of the car purchaser is not sufficient—the law requires an investigation of the ''moral responsibility, character, and reputation of the purchaser.''

As pointed out by respondent, at the time of the sale of the Buick, Ross was a total stranger to appellant. The sole investigation of his moral responsibility, character and reputation by appellant consisted in forwarding Ross' application to the finance company. The manager of the finance company testified that he contacted the personal reference, Mr. Nandel, and asked ''what he knew about Mr. Ross, how long he'd known him, and what type of character, if he done a lot of drinking and running around, and so on and so forth. As far as following through character references, that was it. His credit was scattered.'' The finance company manager knew Nandel only as one of his customers, ''that he had a steady income, had a residence in Santa Monica, and that his character was good and his ability to pay was good.'' After talking with Nandel, the finance company manager advised William Pearson that he would require that Nandel cosign with Ross on the contract. With reference to any insurance company investigation, it appears only that the insurance was placed through a broker and the finance company manager wrote to the Navy base advising that liability insurance had been secured so that Ross would be permitted to bring the automobile on the base.

The trial judge in this cause was impressed that no real investigation was made either by the finance company or appellant into the moral responsibility, character and reputation of Ross. The testimony of the finance company manager indicates that instead of a thorough investigation, after talking with Nandel he dropped further inquiry—"As far as following through character references, that was it. His credit was scattered."—and solved his problem by rejecting Ross as a credit risk unless he secured Nandel as a cosigner.

Stress is laid by appellant upon the fact that when Ross returned to purchase the Studebaker, he had an honorable discharge from the Navy and that payments had been regularly made on the contract for the Buick previously purchased. The trial court was of the view that the presentation of an honorable discharge was not a substitute for the investigation as to moral responsibility required by law, nor was the fact that payments had been made upon the Buick. As pointed out in *People* v. *One 1940 Buick 8 Sedan, supra,* an investigation into the financial standing or credit rating of a purchaser is not sufficient.

█ Appellant contends that it made as much investigation as expedient with the information at hand. The question, however, is not what is expedient, but what constitutes a reasonable investigation. In *People* v. *One 1939 Buick 8 Coupe,* 43 Cal.App.2d 411, 416 [110 P.2d 1013], the court said: "It would seem that a bona fide investigation should, among other essentials, reveal the home address of the prospect, his employer, either past or present, the source of his income, his family, or social connections, and as in the case here of a stranger, some inquiry as to his prior location and his standing in that community."

. █ In determining whether a reasonable investigation was made, the trial court also heard the testimony of a narcotics investigator as to conversations with Herbert Pearson, a co-owner of appellant, Pearson Motors. As stated at the outset of this opinion, it was the province of the trial court to resolve conflicts in the testimony, to choose among permissible inferences, and to evaluate the testimony in the light of the demeanor, apparent candor, bias, interest and motives of the witnesses. The trial court here concluded that appellant did not make a reasonable investigation when the Buick was purchased, but was content when the purchaser secured a cosigner satisfactory to the finance company. It made no fur-

ther investigation when the Studebaker was purchased. The determination of the trial court being supported by substantial evidence, the judgment must stand.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.