[Civ. No. 6488.   Third Appellate District.—March 10, 1941.]

THE PEOPLE, Appellant, v. ONE 1939 BUICK 8 COUPE, ENGINE No. 43787923, Defendant; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Earl Warren, Attorney-General, and J. Albert Hutchinson, Deputy Attorney-General, for Appellant.

C. Ray Robinson, Louis Ferrari, G. D. Schilling and D. Bianco for Respondent.

PULLEN, P. J.—This is an appeal by the People of the State of California from a judgment under proceedings provided for in Division X, Chapter 7, Article 1 of the Health and Safety Code (Chapter 60, Statutes 1939), in which it was held that the 1939 Buick here involved had been unlawfully used for the purpose of concealing and transporting opium, but the forfeiture of the Buick automobile was denied and released to respondent Bank of America, the legal owner thereof.

On September 28, 1939, Charles L. Fink, an automobile dealer in Fresno, sold and delivered respondent Buick to Jimmie H. Fong for $609.55 in cash and the balance payable in monthly installments as provided in a conditional sales contract. On October 2, 1939, the contract was sold to Bank of America, and the Certificate of Legal Ownership was delivered to the bank. On November 13, 1939, Jimmie Fong, while driving the automobile in question, was arrested in Merced County and charged and later convicted of transporting narcotics.

The Division of Narcotic Enforcement took possession of this automobile under the provisions of the Health and Safety Code and commenced this action for the forfeiture of the car.

The Bank of America, as legal owner, filed its answer setting forth that the sale was a *bona fide* transaction between

Fink and Fong; that the bank was the owner of the car, and that approximately $700.00 was still due the Bank. The answer also denied the unlawful use of the automobile for the transportation of narcotics, and alleged the bank had no knowledge of the unlawful use or intention so to use; that the bank had made a reasonable investigation of the moral responsibility, character and reputation of Fong before its right, title or interest in the automobile had been created, and asked that the automobile be returned to the bank or that it be sold and the balance due under the contract be paid it.

After trial the court found in favor of the bank, holding it had made reasonable investigation of the moral responsibility, character and reputation of Fong, and entered judgment in favor of the bank, directing the Buick be released to the bank and not forfeited to the state.

From this judgment the state has appealed, principally upon the ground the evidence did not support the allegations and finding that the seller and the bank had made a reasonable investigation of the moral responsibility, character and reputation of the purchaser, Jimmie Fong.

Section 11620 of the Health and Safety Code provides:

"The claimant of any right, title or interest in the vehicle may prove his lien, mortgage or conditional sales contract to be *bona fide* and that his right, title or interest was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged."

Testimony respecting negotiations leading up to the sale of the Buick to Fong is given by Hiram Wong, a Chinese salesman employed by the Fink Company. He testified he first met Fong when he came in to discuss the purchase of a used automobile, about six months prior to the sale of this particular car. No sale was then made. The witness Wong said that after that first meeting he saw Fong from time to time in the Fresno Chinatown, sometimes in a coffee shop operated by Mabel Tom, and sometimes in China Alley. He testified he had talked to Mrs. Tom about Jimmie Fong and was asked, "During your conversation with her (Mrs. Tom) what was said with reference to Jimmie Fong? A. Mrs. Tom told me that Fong is a good character, his moral is good, and good reputation too." Asked as to who was present during

this conversation, the witness stated there were some customers in the restaurant but he did not know their names, and he was then asked, "At the time you talked with Mrs. Tom you had discussed the sale of an automobile to Jimmie Fong? A. Yes sir, I asked Mrs. Tom whether he paid his bills and whether he is a good character and she told me he is. The Court: You misunderstood the question: Did you ever talk to Fong prior to the time you talked to this lady about him buying a car from you or you selling him a car? A. No, I didn't. Question by counsel: It was after you talked with Jimmie Fong concerning the sale of an automobile that you talked with Mrs. Tom? A. After? Q. Yes, it was after you talked with Jimmie Fong about selling him an automobile that you talked with Mrs. Tom about his character and reputation, is that so? A. Yes sir."

He also, prior to September 29th, talked on the telephone with one Johnnie Gamble, of whom the witness seemed to know practically nothing. "I asked him how his (referring to Fong) character—and he told me he has a good reputation and morals is all right." The witness testified he told Mr. Fink, his employer, "that boy is all right,—he pay his bills, he is a good character and his morals are O.K.".

It was brought out that the address given by Fong was that of a Chinese club, the Bing Kong Tong headquarters, but the Chinese witness seemed to know nothing about the club or the nature of its accommodations, he never having been inside. Although Wong had lived in Fresno since 1917, and the Chinese population of Fresno was only about 700 or 800 people, he talked to no one else about Fong. Upon cross-examination the witness could not recall a conversation with Mr. Creighton, an Inspector for the State Narcotic Division, in which Creighton testified Wong had told him he had made no investigation of Fong prior to the sale. The witness admitted Fong was a stranger to him, and the only persons of whom he inquired were the two witnesses we have mentioned, Mrs. Tom, and Gamble. He did not ascertain his business nor his residence address, nor make inquiry of any of his countrymen, except Mrs. Tom, nor learn where he had previously lived, or the nature of his work, or the names of any employers.

Mr. Davis, who was in charge of the installment sales department of the Fresno Main Branch of the Bank of America,

the purchaser of the sales contract in question, obtained a financial report from the Fresno Merchants Association, and talked to the sales manager of the Charles Fink Company as to the investigation made by them. He also, upon inquiry of the West Fresno Branch of Bank of America, learned the condition of Fong's bank deposits and balance in that bank. This information was obtained by the bank after the signing of the contract of purchase by Fong, and before the contract was taken over by the Bank. The information furnished by the selling agency to the Bank was that their investigation showed to their satisfaction the character of Fong, and that, in their opinion, with the down payment the contract was satisfactory.

The report as received by the Bank from the Merchants Association is as follows:

"Copy of report from Fresno Merchants Association— Memorandum for Credit Files. 10–16–39. Auto Loan. JIMMIE H. FONG, 921 China Alley, Fresno. New to files. Claims to be 27, and single. Employed by self. No information by those at the given address. No one knows about him. PERSONAL REFERENCE reports HC of $10.00, and subject always pays as agreed. Another personal reference cannot be located. West Fresno reports balance of $445.00 in Savings Account."

Mr. Lieu, a Chinese bank teller in the West Side Branch, Bank of America, testified to meeting Fong when he first came into the bank to open an account in January, 1939. At that time Fong told him he was a waiter and had come from Sacramento to Fresno with the intention of opening a restaurant. By September of that year Fong had built up his account from the opening deposit of $50.00 to $1055.00, after which date he made withdrawals from time to time until it was practically closed at the time of his arrest. Whether or not the information possessed by Mr. Lieu was communicated to anyone in the bank or to the Fink Company or the main bank of the Bank of America is rather uncertain, the testimony on that matter being rather vague. Mr. Creighton, the State Inspector, testified as to conversations with Mr. Wong, and he disputed the testimony of Wong in that he said Wong told him he had made no investigation before the sale of the car to Fong. He also testified that Mr. Davis of the Bank of America told him he (Davis) had

made no investigation of Fong other than the financial report record from the Credit Association. The bookkeeper for Charles L. Fink also told Creighton they had made no investigation other than financial of Fong.

The foregoing constitutes in substance the evidence as to the investigation made by Fink and the bank as to the financial and moral responsibility of Jimmie Fong.

■ In the recent case of *People* v. *One 1938 Buick,* 39 Cal. App. (2d) 42 [102 Pac. (2d) 447], some of the problems here presented were met and considered and we need not again review the cases there collected and analyzed. It is clear, however, that the burden of proving an investigation of the kind and to the extent required by the statute rests upon the claimant, and although the question of the scope and reasonableness of such an investigation is primarily one of fact, it must meet certain legal requirements. It would seem that a *bona fide* investigation should, among other essentials, reveal the home address of the prospect, his employer, either past or present, the source of his income, his family or social connections, and as in the case here of a stranger, some inquiry as to his prior location and his standing in that community. It is very clear the law requires inquiry along two distinct lines, his financial status and his moral responsibility. These cover two spheres of activity and a purely financial examination will not necessarily, and it did not here reveal the necessary facts to pass upon the moral responsibility, character and reputation of the prospect.

■ Here we have an investigation by Hiram Wong, who by leading and suggestive questions tells of making inquiry of Mrs. Tom, a restaurant keeper, whose only contact with Fong was that he took some meals at her place of business, and sometimes she gave him credit for a small amount, which he paid. He also inquired of one Gamble, but who Gamble was or what his ideas of moral responsibility may have been, the record is silent. Wong did not inquire of the many respectable and high principled Chinese undoubtedly to be found in the Chinese quarters of Fresno; he did not attempt to ascertain his home address; he did not know with whom he associated, nor the source of his rather rapidly growing bank deposits, except that he was in business for himself, but he did not inquire what kind of business. The one name fur-

nished by Fong as a relative, was a man living in Sacramento, and he was not contacted.

We also have an investigation by the bank, which is quite obviously a financial investigation. The manager of the installment department called the Fink Company to ascertain the extent of their investigation; he obtained a Merchants' Association report and a bank report from the bank in which Fong carried an account.

It seems the investigation here was no more than would have been done if the subject of the contract had been for the purchase of a piano or a refrigerator. The investigation of a proposed purchaser of an automobile is not alone for the protection of the financial investment of the seller or the bank, but the legislature has, in effect, said the public also has an interest in the character of persons who may acquire automobiles.

The purpose of the law clearly is to keep automobiles out of the possession of those who might use them for an unlawful purpose. It is one method devised to aid in the prevention of crime, and therefore it becomes the duty of the courts to assist in the accomplishment of the purpose of the law.

The investigation here detailed is so slight that to place the stamp of approval upon such a cursory examination of one's moral background and to hold it as sufficient, would be to make this particular law of little value. The facts do not support the findings or the judgment. The judgment is reversed.

Tuttle, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 8, 1941, and respondent's petition for a hearing by the Supreme Court was denied May 8, 1941.