[Civ. No. 12877. First Dist., Div. One. Aug. 18, 1945.]

THE PEOPLE, Respondent, v. ONE 1940 BUICK 8 SEDAN, Defendant; F. C. MACY et al., Appellants.

544

Combs & Murphine for Appellants.

Robert W. Kenny, Attorney General, and Ralph W. Scott, Deputy Attorney General, for Respondent.

PETERS, P. J.—This proceeding was instituted by the state under section 11610 et seq. of the Health and Safety Code to forfeit the interests of George Morris, the registered owner, the Kelley Kar Company, and the Automobile Investment Company, a partnership, the legal owner, of a certain 1940 Buick Sedan, on the ground that such vehicle was used to unlawfully conceal, convey, carry, or transport marihuana in violation of the provisions of the Health and Safety Code, *supra*. Morris filed an answer denying the charge, but did not defend the action. He subsequently pleaded guilty to unlawful possession of narcotics based on the transaction here involved. The Kelley Kar Company had sold its interest in the automobile to the Automobile Investment Company prior to the date of the seizure and has no interest in this proceeding. The Automobile Investment Company alleged in its answer that the Kelley Kar Company sold the automobile to Morris by a conditional contract of sale which was subsequently purchased by it; that when the Kelley Kar Company executed the original contract of sale it made a proper investigation of the moral responsibility, character, reputation and credit of Morris, the nature of which investigation is set forth in detail and will be later discussed; that Kelley Kar Company when it sold the contract to defendant informed defendant of the nature, extent and results of its investigation. This defendant also denied that marihuana was ever unlawfully possessed by an occupant or that the vehicle was used to unlawfully conceal, convey or transport marihuana. It denied any knowledge that the vehicle was to be so used.

The trial court found that the Buick in question on October 16, 1943, was used by Morris "to unlawfully conceal, convey, carry and transport a certain narcotic, i. e., marihuana" contrary to the provisions of the Health and Safety Code, and that the interest of defendant "was not created therein after a reasonable investigation of the moral responsibility, character and reputation of the said George Morris." Based on these findings the interests of all concerned were forfeited to the state. From this judgment the Automobile Investment Company appeals, contending (1) that there is no evidence to support the finding that the automobile was used to transport narcotics; (2) that before the interest of a lien holder may be forfeited on the ground that a narcotic is unlawfully kept, deposited or concealed therein the lien owner must be *particeps criminis* with the occupant; and (3) that, in any event, the evidence shows, as a matter of law, that the investigation required by the statute to protect the lien holder was here made. All of these contentions are without merit.

The finding that the automobile was used to transport a narcotic unlawfully is amply supported by the evidence of the two arresting inspectors. They testified that they seized the vehicle and arrested Morris on October 16, 1943; that on that evening they were waiting for Morris to return to his home at 2753 Golden Gate Avenue, San Francisco; that they were parked in their car across the street from that address; that late in the evening Morris drove up in the Buick and parked in front of that address; that with Morris was his wife; that Morris got out of the car and started to lock the door; that they got out of their car and started towards the Morris car; that the Morris car was parked near a street light; that as they approached within a few feet of the Morris car, Morris appeared to observe them, opened the front door of the Buick, reached into the car near the steering wheel and removed something therefrom, and then dropped a paper into the gutter by the curb. Inspector Carpenter testified that he picked up that paper and that there was no other paper near it in the gutter. Upon being analyzed the paper was found to be a cigarette butt containing three grains of *cannabis sativa*— marihuana. Morris denied that the cigarette was his and "he stated that he had not sold any marihuana for a long time." The two inspectors then accompanied Morris and his wife into the Morris house. Inspector Armstrong accused Morris of

having gone to Tia Juana and returned with a large shipment of marihuana. Morris admitted just having returned from Tia Juana, but denied bringing in narcotics and stated that he had not had anything to do with peddling marihuana for a long time. Morris pleaded guilty to possession of narcotics based on this transaction.

This evidence supports the finding that Morris was unlawfully transporting three grains of marihuana at the time and place in question. The officers saw the car moving on the public street, and saw Morris remove the narcotic from the car and drop it in the gutter. Defendant contends not only that three grains of marihuana is an insufficient quantity to constitute a violation of the act, but also that the act is violated only upon a showing that the occupant used the car *to traffic* in narcotics. The difficulty with these contentions is that they disregard the language of the statute. Although the prevention of the traffic in drugs is the basic aim of the statute, in order to effectually accomplish this purpose the Legislature has seen fit to provide that "A vehicle used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed, or in which any narcotic is unlawfully possessed by an occupant thereof, shall be forfeited to the State." (Health & Saf. Code, § 11610.) Traffic in drugs is not made an indispensable element of any portion of this statute. Nor is any definite quantity of narcotics specified. As was said in *People* v. *One Ford Coupe*, 10 Cal.App.2d 321, 323 [51 P.2d 882], in answering a similar contention: "If a forfeiture for the transportation of such a small quantity of narcotics seemed a drastic penalty it nevertheless was a matter within the domain of the legislature and was not a matter to guide the judgment of the court."

That no specific quantity of narcotics need be involved to result in a forfeiture seems so obvious from a reading of the statute that the point would not require further discussion were it not for some unfortunate dicta appearing in *People* v. *One 1941 Cadillac Club Coupe*, 63 Cal.App.2d 418 [147 P.2d 49], decided by a divided court and in which three jus-tices of the Supreme Court voted for a hearing. The only real question involved in that case was the sufficiency of the examination by the conditional vendor and its assignee. In the course of its discussion of this problem the court quoted section 11610 of the Health and Safety Code and then stated

(p. 421) : "To transport means to carry or convey from one place to another. And it must clearly appear that the vehicle was being used for such a purpose. The incidental discovery of a single marihuana cigarette in a vehicle is not sufficient to establish the fact that the vehicle was being used *to transport* narcotics. The forfeiture provisions of the Health and Safety Code are designed to aid in the suppression of the traffic in narcotics. There is no evidence in the record tending to prove, or that even suggests, that the automobile in question was being used for such a purpose."

It is somewhat difficult to ascertain what the court meant by the quoted language. So far as the opinion discloses, the arresting officers did not observe the automobile in motion. The opinion simply states that (p. 419) "while the automobile was, with the consent of the registered owner, under the sole control and in the temporary possession of one Andrew Pekara, certain narcotic enforcement officers made a search of the vehicle and in a depression in the seat thereof . . . found a single Marihuana cigarette." If the first quoted portion of the opinion merely holds that to prove an offense under the transportation portions of section 11610 there must be some evidence that the car was moved while the narcotics were therein, the opinion is undoubtedly correct. This element of proof was supplied in the instant case. The arresting officers saw Morris drive up and remove the narcotic from the car. If the portion of the opinion first above quoted should be interpreted to mean that the finding of one marihuana cigarette in an automobile that was observed to be moving in traffic does not constitute a violation of the transportation provisions of section 11610, *supra,* or that the state must prove that the occupant of the car was actually engaged in the drug traffic, then the opinion must be disregarded as being directly contrary to the provisions of the pertinent statute. At any rate the language quoted was not necessary to the opinion and was clearly dictum.

 So far as the contention that to forfeit a conditional vendor's interest there must be evidence that he was an aider and abettor of the occupant is concerned, it is obvious that the section provides for no such requirement. This point has recently been determined by the Supreme Court in a decision rendered after the trial of this case and after the briefs were prepared. In *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503 [159 P.2d 641], it was held that the legal and

registered owner's interest would be forfeited even where the occupant, there an employee, was using the car on a personal errand and in direct violation of instructions. It was also held that the only defense permitted was that the legal or registered owner had made a proper investigation, and that no other defense, except that the car is used without the owner's consent—i. e., is stolen—is permitted by law.

The next contention is that the finding that the defendant did not make a reasonable investigation before purchasing the contract is unsupported by the evidence. Section 11620 of the Health and Safety Code provides: ''The claimant of any right, title, or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged.'' There is no doubt that the conditional sales contract here involved was bona fide and that neither the Kelley Kar Company nor the defendant had any knowledge that the car was to be used to transport narcotics.

In interpreting the above quoted section certain principles have been definitely settled.

█ 1. The defense that the investigation required by the statute has been made is an affirmative defense, and the burden of proof on the issue rests with the claimant.

█ 2. The question as to whether a proper investigation has been made is one of fact and is to be tested by the legal standards ordinarily applied to such fact questions.

█ 3. The statute does not prescribe the maximum or minimum of the investigation that must be made. It requires a ''reasonable'' investigation of the factors involved. What is reasonable must be governed by the facts of each case.

4. An investigation into the financial standing or the credit rating of the car purchaser is not sufficient—the law requires an investigation of the ''moral responsibility, character, and reputation of the purchaser.'' (See cases cited later in this opinion.)

There have been many cases decided by the appellate courts discussing what constitutes a sufficient investigation. Some have held that the investigation made in the particular case complied with the statutory requirements. (*People* v. *One*

*1933 Buick Sedan,* 43 Cal.App.2d 482 [111 P.2d 378] ; *People*
v. *One Ford V8 Coach,* 21 Cal.App.2d 445 [69 P.2d 473] ;
*People* v. *One Plymouth Sedan,* 21 Cal.App.2d 715 [69 P.2d
1011] ; *People* v. *One 1939 Plymouth 6 Coupe,* 41 Cal.App.
2d 559 [107 P.2d 266] ; *People* v. *One 1940 Chrysler Coupe,*
48 Cal.App.2d 546 [120 P.2d 117] ; *People* v. *One 1939 Buick
Coupe,* 56 Cal.App.2d 163 [132 P.2d 308].) All of these cases
involved situations where the trial court found the investiga-
tions were sufficient, and it was held that the finding was sup-
ported.

There are other cases affirming the finding that the investi-
gation was insufficient. (*People* v. *One 1938 Buick Sedan,*
39 Cal.App.2d 42 [102 P.2d 447] ; *People* v. *One Packard 6
Touring Sedan,* 26 Cal.App.2d 150 [79 P.2d 130].)

There are also cases where the trial court found the in-
vestigation was sufficient to comply with the statute, but the
appellate courts held that the finding was unsupported, and
the judgments for the lien claimants were reversed. (*Peo-
ple* v. *One Harley-Davidson Motorcycle,* 5 Cal.2d 188 [53 P.
2d 970] ; *People* v. *One 1939 Buick 8 Coupe,* 43 Cal.App.2d
411 [110 P.2d 1013] ; ·*People* v. *One 1937 Packard,* 50 Cal.
App.2d 761 [123 P.2d 900] ; *People* v. *One Lincoln Eight,*
12 Cal.App.2d 622 [55 P.2d 925].) This last cited series of
cases is of particular importance because they involved
situations where it was held that the investigations there
made, as a matter of law, were insufficient. In the 5 Cal.2d
188 [53 P.2d 970] case the conditional vendor secured the
names of three references from the purchaser, one of whom
was the employer of the purchaser. The employer was
interviewed. It was held that the investigation as a matter
of law did not comply with the statute.

In the 50 Cal.App.2d 761 [123 P.2d 900] case the pur-
chaser made certain statements as to his background to the
manager of the bank, among which was the statement that
he lived with his parents. The manager knew the parents
of the purchaser and had had business dealings with them
for over ten years. He knew the parents had a fine reputa-
tion and was satisfied, when the father of the purchaser
agreed to endorse the purchaser's note. A finding that the
investigation complied with the statutory requirements was
reversed.

In the 12 Cal.App.2d 622 [55 P.2d 925] case the testi-

mony showed an investigation was made of the financial responsibility of the purchaser, and that an inquiry was made of two references and one stated the purchaser was a "good old soak" and the other that the purchaser was a "very fine gentleman." The finding that a proper investigation had been made was reversed.

One of the best reasoned cases dealing with this problem is the one appearing in 43 Cal.App.2d 411 [110 P.2d 1013]. In that case the salesman that sold the car had known the prospective purchaser for a period of over six months. He called at the purchaser's home at least once and knew the purchaser frequented a certain eating place. He inquired of the proprietor about the reputation of the purchaser and was told that the prospective purchaser was of "good character," was of good morals and of "good reputation." No inquiry was made at the prospective purchaser's home or business address. A financial report was secured from a credit 'association. In holding that the finding that a proper investigation had been made was unsupported the court stated (P. 416) : "It is clear, however, that the burden of proving an investigation of the kind and to the extent required by the statute rests upon the claimant, and although the question of the scope and reasonableness of such an investigation is primarily one of fact, it must meet certain legal requirements. It would seem that a bona fide investigation should, among other essentials, reveal the home address of the prospect, his employer, either past or present, the source of his income, his family or social connections, and as in the case here of a stranger, some inquiry as to his prior location and his standing in that community."

Tested by these standards we cannot hold that the challenged finding is unsupported as a matter of law. The record shows that when Morris purchased the automobile on August 30, 1943, he was a stranger to the seller and that he gave the seller, Kelley Kar Company a "purchaser's statement." In this statement he stated that his residence was 439 Lisbon Street, San Francisco; that for the past three years he had been employed as a watch salesman and by the Merchant Marine; that his salary was $300 per month payable on the first of each month; that the name of his previous employer was the Yellow Cab Company in San Francisco; that he was married and had one child. He gave the names of three persons in San Francisco as

personal references, and stated that he had purchased a car through a designated seller in San Francisco.

The record shows that the C. I. T. Corporation refused to purchase this contract; that nevertheless the Kelley Kar Company, pursuant to prior arrangements, asked the Los Angeles office of the Universal C. I. T. Corporation for a report on Morris. This request was forwarded to the San Francisco office of the C. I. T. Corporation. That company referred the request to the Retail Credit Association in San Francisco. That company reported that they had a card in their files dated December 12, 1926, which showed the occupation of the proposed purchaser was that of fruit peddler and that he owed a jewelry company $30 and had not paid it. The report also stated that the Yellow Cab Company reported that he had been employed by that company but had left their employ in July of 1943. The report also stated that Ed's Vehicle Company had sold him a car but that a finance company had purchased the contract and that Ed's Vehicle Company had no record of the transaction. The report concluded: "Sorry we could not get more for you."

This information was forwarded to the Kelley Kar Company in Los Angeles. The defendant company purchased the contract from the Kelley Kar Company on September 20, 1943, in the regular course of business. They had purchased several hundred thousand dollars worth of contracts from the Kelley Kar Company. The Automobile Investment Company made no independent investigation but relied on that made by Kelley Kar Company, the results of which they knew.

There is another report of the Retail Credit Association that appears in the record. This report is dated November 29, 1943. This report also states that Morris had been employed by the Yellow Cab Company; that in 1936 he was reported to be a fruit peddler but "we were unable to learn details"; that a sister of Morris informed the questioner that Morris was in the Merchant Marine and that his wife was believed to be with the Yellow Cab Company; that the Morrises no longer live at 439 Lisbon Street; that their present address is unknown; that the Yellow Cab Company has no record of the employment of the wife; that "without a residence address we are unable to learn details of his

activities. Due to emergency restrictions the U. S. Merchant Marine refuses information''; that ''their financial status is unknown.'' There is considerable doubt as to whether defendant had the information in this report prior to September 20, 1943, when it purchased the contract. The defendant contends that the information in the November report was telephoned to Kelley Kar Company September 8, 1943. This is not entirely clear from the testimony of the representatives of the Retail Credit Association. The trial court would have been justified in finding that the defendant did not have the information contained in the November report at the time it purchased the contract. However, we are of the opinion that even if both reports of the Retail Credit Association were before the defendant before it purchased the contract the investigation did not, as a matter of law, comply with the statutory requirements.

Morris was a stranger to the Kelley Kar Company and to defendant. The automobile was purchased in a locality where the purchaser was unknown. The investigation made was primarily a credit investigation. No real investigation was made at the place of employment given on the questionnaire except to discover that he was no longer there employed. The investigation did disclose that neither Morris nor his wife lived at the address given by Morris. No check at all was made of the personal references given. The investigation disclosed that Morris had been a peddler and not a watch salesman as he had stated, and that he had failed to pay a $30 bill. Certainly the investigation here made cannot be held, as a matter of law, to constitute a ''reasonable investigation of the moral responsibility, character, and reputation of the purchaser'' as required by section 11620 of the Health and Safety Code. The finding that no real investigation of the purchaser's moral responsibility was made is amply supported.

Defendant makes the usual arguments made in these forfeiture cases, namely, that the statute is a harsh one, that it must be strictly construed, that their investigation was as thorough as is practical in modern business dealings, and that their reliance on established credit agencies was reasonable. The law has seen fit to provide a forfeiture of the innocent vendee's interest except where a proper investigation is made. The Legislature has determined that such forfeitures are reasonably necessary to carry out the bene-

ficent purposes to the statute. ▆ It is not for the courts to try to relax the clear terms of the statute. The answer to defendant's contentions is to be found in the case of *People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503, 507 [159 P.2d 641], where it was stated: "Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded."

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.