[Civ. No. 14887.   Second Dist., Div. Three.   Jan. 18, 1946.]

THE PEOPLE, Respondent, v. ONE 1941 BUICK CLUB COUPE, Defendant; FRED W. GRAY, Appellant.

594

MacFarlane, Schaefer & Haun and Dexter D. Jones for Appellant.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

DESMOND, P. J.—In a proceeding instituted by the State to forfeit the interest of the registered and legal owners in a seized automobile which, it was charged, was used to conceal and transport marihuana in violation of section 11610 of the Health and Safety Code, judgment was rendered in favor of the State free of the lien of the legal owner, from which judgment the legal owner of the vehicle appeals.

The registered owners of the vehicle were Willie L. Bowens and Mary L. Bowens, while Fred W. Gray, doing business as Fred W. Gray Company, was the legal owner. Both owners filed answers to the notice of seizure and intention to forfeit. Willie L. Bowens and Mary L. Bowens alleged in their joint answer that they owned an equity in the vehicle, but denied that it had ever been used to "unlawfully conceal, convey, carry or transport marihuana or any other narcotic or drug in violation of section 11610 of the Health and Safety Code," as charged in the forfeiture proceedings. As a second defense, Mary L. Bowens, alone, alleged she had never consented or permitted "any occupant or occupants or any other person to use said automobile for said alleged unlawful purpose."

The legal owner, Fred W. Gray, in his answer alleged that Willie L. Bowens and Mary L. Bowens had borrowed $1,068.76 from him, had executed their promissory note, payable in twelve monthly installments, and had given him a chattel mortgage on the vehicle subsequently seized; that he had made a "reasonable investigation of the moral responsibility, character and reputation" of the parties before his interest was created and found them to be good.

The court found that at the time of the seizure the vehicle was in the possession of one of the registered owners, Willie L. Bowens, and was "used to conceal, convey, carry or transport marihuana"; that the legal owner's "right, title or interest . . . was bona fide," made without knowledge that the vehicle was being used in violation of the provisions of the law relating to narcotics, and that a "reasonable investigation" of the moral responsibility, character and reputation of the registered owners was not made by the legal owner before his interest was created. The court concluded therefrom that the vehicle should be forfeited to the State and entered judgment accordingly.

Appellant Gray challenges the sufficiency of the evidence to sustain the judgment. In this connection he argues that the evidence does not establish any "unlawful transportation or possession of narcotics against the registered owners within the contemplation of the statute," but this argument is without merit. The record supports the court's findings. The provisions of the Health and Safety Code relating to the forfeiture of vehicles are found in division X, chapter 7, article 1, sections 11610 to 11629, inclusive. Section 11610 provides that "a vehicle used to unlawfully transport any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed, or in which any narcotic is unlawfully possessed by an occupant thereof, shall be forfeited to the State."

The circumstances relating to the seizure of the vehicle in this case were stated by Lewis Walter, one of the arresting officers. He testified that on May 11, 1944, he and Officer Kelley were in the vicinity of the Rex Hotel, located at Fourth Street and Central Avenue in the city of Los Angeles, "investigating complaints of narcotics and other crimes"; that Willie Bowens and two other persons were first observed when "His [Bowens'] car or a car pulled up in front of the hotel and a man alighted from the car and went into the hotel and he

was gone just a brief period of time, less than five minutes, and he returned and re-entered the car which was left there at the curb and drove west on Fourth Street." The two officers followed the car and stopped it on a nearby street shortly after midnight. According to Walter, when he and Officer Kelley walked around to the side of the car, Bowens, the driver of the vehicle, "made a motion with his hand as though pulling something from under the seat. ..."; that they opened the door of the car, on the driver's side, and found a marihuana cigarette and a little white pill just directly below the seat on the floor-board or on the mat over the floor-board. The vehicle and its occupants were then taken to the City Hall where, in their presence, the officers completed their search and found five more cigarettes underneath the seat of the car. Walter stated that he questioned Bowens concerning the cigarettes and he "denied any knowledge of them whatsoever," and stated they were not his. While at the City Hall, Walter secured some "debris" from Bowens' right coat pocket, the contents of which were preserved and placed in a white envelope.

On the trial it was stipulated by counsel for the registered owners and counsel for appellant legal owner that if the chemist who had examined the contents of the cigarettes were called on behalf of the plaintiff he would testify that they contained marihuana. The record does not indicate, nor was any claim advanced by the plaintiff, that the other items, i.e. the pill and the "debris' from Bowens' pocket, contained any narcotics. When Bowens was called as a defense witness he did not testify concerning any of the details of the arrest nor did he deny the possession or the transportation of the marihuana cigarettes, but confined his testimony principally to the details of the loan arrangement with appellant Gray.

The testimony of Officer Walter sufficiently supports the court's finding that the vehicle was used to conceal and transport marihuana within the purview of the narcotic law. No specific quantity of narcotics need be involved to result in a forfeiture under the narcotics act (*People* v. *One 1940 Buick 8 Sedan* (1945), 70 Cal.App.2d 542, 545 [161 P.2d 264]).

Appellant claims that the forfeiture of the vehicle was improper as to Mary L. Bowens, one of the registered owners, and that the court erred in striking an answer given by her to the effect that she had not given Mr. Bowens permission to

take the car. The basis of the argument upon this subject was that "these parties [Willie L. Bowens and Mary L. Bowens] were not married and that each had an undivided half interest in the automobile and it was the right of Mary L. Bowens to show that the car was not used with her consent, at least so far as her interest is concerned." It appears from the record that Willie L. Bowens and Mary L. Martin (Bowens) had been living together at 960 E. 47th Street for over two years. According to the latter's testimony, Bowens had moved out of the home a few days prior to the arrest and seizure and at that time told her the automobile was to remain her property. However, on May 10, 1944, without her consent or knowledge, Bowens took the automobile from the home. Assuming the truth of this recital, nevertheless at the time of the seizure the vehicle was registered in the names of Mary L. Bowens and Willie L. Bowens, as owners, and under these circumstances Willie L. Bowens had a legal right to the possession of the vehicle without obtaining the consent or permission of his coowner (Veh. Code, §§ 66, 68). The court's action in sustaining the objection to the answer remaining in the record was proper.

Appellant argues further that the court erred in finding that a reasonable investigation had not been made by the legal owner before making the loan, but, applying the "definitely settled" principles set out in *People* v. *One 1940 Buick 8 Sedan, supra,* 70 Cal.App.2d 542 at page 548 [161 P.2d 264], the record, in our opinion, supports the findings.

Section 11620 of the Health and Safety Code reads as follows: "The claimant of any right, title, or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged."

Fred W. Gray testified that he had been engaged in the automobile financing and loan business for over twenty-five years; that on March 20, 1944, Willie L. Bowens and Mary L. Bowens, representing themselves as husband and wife, made the loan, signed the note and executed the mortgage mentioned in his answer; that other papers in connection with the loan were made, including a statement of the borrower, ap-

plication for loan, statement of loan, and insurance application; that no payments had been made on the loan; that the following references were secured from the borrowers: The Kelley Kar Company, Roy Gardner, Mamie Chorn of Berkeley, California, and Troy Jackson. In answer to the query, "Did you make any investigation as to the character of these people, their moral responsibility?", Mr. Gray stated, "I talked to Mr. Morgan who brought Mr. Bowens to our office to make the loan. . . . He is an outside collector for the Kelley Kar Company. Q. Had there been a transaction previously with the Kelley Kar Company? A. Yes. Q. And this is what you people call a pay-off on that previous loan? A. Yes. . . . Q. And what did he [Morgan] say? A. He said he had contacted . . . Mr. Bowens—in regard to the delinquent payments, that he was past due around thirty days with the Kelley Kar Company, that he had been ill and could not make the installment that was due and it would be approximately thirty days yet before he could accumulate enough money to catch the payments up to date and wanted him to refinance the account and he said that he had contacted or he had been to the residence at 960 East 47th Street on several different occasions, that he contacted Mr. Bowens and had him come to our office. . . . He said that there was [sic] some children there that appeared to be well dressed, the house was fairly neat in appearance and the neighborhood looked all right. . . . He said that he worked for the Union Pacific Railroad. According to Mr. Gray, Mary L. Bowens told him that she was employed at the Post Office; that he checked there but "The information we got was very indefinite. . . . they said she was employed there for a considerable time and that is the only information they would give us"; that his inquiry was made "under the name of Mary L. Bowens"; that he also checked with the Union Pacific Railroad and found that Mr. Bowens "had been employed there on and off I believe it was or fairly steady for a period of seventeen months. . . . He was a waiter or chef. I was kind of indefinite on that. I think first I had it as a chef and later we found it was a waiter, or one way or the other." Gray was then asked, "Did they say anything as to character, reputation or integrity?," and replied, "I believe all I asked was whether he was fairly steady in his position and whether he got in trouble or not. . . . They said he was fairly steady in his employment." Mr. Gray stated that he telephoned Roy Gardner [owner of the Rex Hotel]

and the latter said he had known Mr. Bowens over a period of several years. "I asked him if he was in the habit of getting into trouble or difficulties and he informed me he was not." In answer to the question, "Now, you asked Mr. Gardner if he was getting into any trouble or difficulties and he said he was not?," Mr. Gray stated, "I believe, as I recall it, he said he had not been in any difficulties unless it might have been some minor thing like gambling. I believe that was the conversation." After having his memory refreshed, this witness then stated that the following testimony given in his deposition was correct, regarding an inquiry made at the Union Pacific as to the name of Bowens' wife: "Q. What information did he give you? A. That the records showed he was married. Q. Did they give you his wife's name? A. They had it the same as we had on ours, Mary L. Q. Mary L. Bowens? A. Yes." Mr. Gray made no inquiry of Troy Jackson or Mamie Chorn.

Two rebuttal witnesses were called on behalf of the plaintiff. One of these, a Mr. Werner McIntyre, assistant superintendent of mails in charge of the personnel section of the Post Office at Los Angeles, testified that the personnel records did not disclose the name of a Mary L. Bowens; that there was a record of a Mary L. Martin and it showed that she was "first appointed as a Christmas temporary substitute clerk on November 24, 1943, and when the Christmas season was practically over she was separated on January 21, 1944. Then she was reemployed on January 28, 1944, just one week later, as a war service substitute clerk and she was dropped for abandonment of service on April 30, 1944." Another rebuttal witness, W. G. Raymond, "commissary" in charge of the officer supervision of the Union Pacific Railroad Company, stated that he had the personnel records of the employees in the dining car service and they indicated that Willie L. Bowens was a dining car waiter; that the record showed that he was married, his wife's name being Etta Bowens, and listed the names of his four children; that his residence address was 960 East 47th Street, Los Angeles; that when persons called on the telephone for information regarding employees it was "a matter of policy of the Union Pacific to give the dates of the employment and the occupation. We try to discourage the fact that salaries should be given although it is not controlled definitely to that extent."

From the foregoing testimony it is apparent that Gray did

not personally know the Bowens until they were brought to his place of business by Mr. Morgan, outside collector for the Kelley Kar Co. The latter merely assured Gray that Bowens was employed by the Union Pacific and, in addition, stated that he had been to the residence of the parties and "the house was fairly neat in appearance and the neighborhood looked all right." The most that can be said of Gray's inquiry at the Union Pacific Railroad Company is that he was able to ascertain the fact that Mr. Bowens was in the employ of that company and was "fairly steady in his employment"; that he was married; that his wife's name was Mary L. Bowens. This latter information was contrary to the information given by the "commissary" of the railroad company when he was called to the witness stand, and how Mr. Gray received the information that Mary L. Bowens was employed at the Post Office is difficult to understand since, as has been indicated, she was listed there under her legal name, Mary L. Martin. As to Mr. Gray's telephone conversation with Mr. Roy Gardner, the record is very limited. It does not indicate in what capacity Gardner was acquainted with Bowens, nor how frequently he saw him; neither does it indicate the source of knowledge upon which Mr. Gardner based his opinion of Bowens. The trial court was not informed as to what standing in the community Mr. Gardner enjoyed and, as a matter of fact, Mr. Gray had no information on that subject at the time he spoke to him, for on cross-examination he was asked, "He [Gardner] operates the Rex Hotel, does he not?," and stated that "I am not sure of that. I just asked for Roy Gardner."

As the court said in *People* v. *One 1939 Buick Coupe,* 56 Cal.App.2d 163, at page 166 [132 P.2d 308], ". . . it must be observed by the courts that their concern is whether the knowledge imparted by those who certify to the character of a borrower would under the circumstances warrant a reasonably prudent person to believe the applicant possessed of the requisite moral attributes." Under the circumstances of the instant case we believe that the trial court was justified in its conclusion that the claimant, Mr. Gray, failed to make a reasonable investigation of the moral responsibility, character and reputation of the people who borrowed money from him. However, appellant claims that it was not incumbent upon him in order to establish an exemption in favor of his interest in the automobile to make any investigation what-

ever. He argues that according to section 11620, *supra*, inquiry is requisite only in the case of a "purchaser" and the Bowens, as to him, were not in that classification. We have not found in our examination of cases where, under section 11620, seizures have been made, that this argument has been urged or passed upon, but note that several of these cases involve transactions similar to the one presented here, namely, a loan secured by a mortgage, e. g., *People* v. *One 1939 Buick Coupe, supra,* and *People* v. *One 1937 Packard* (1942), 50 Cal.App.2d 761 [123 P.2d 900]. Since this section is drawn to exempt a claimant who holds a mortgage made after a reasonable investigation, we believe that counsel for respondent is correct when he states that the word "purchaser" should be given an interpretation broad enough to include "borrower" in cases such as the present. He reinforces his argument in the following language: "It should also be observed that this section provides an exception from forfeiture if such lienholder can prove a reasonable investigation. Without such an exception, the interest of a legal owner could be forfeited regardless of the showing made. It would follow the usual statutory interpretation that the inclusion of one thereby excludes all others. As far as this statute is concerned the statute exempts persons claiming a repair man's lien (section 11621) a common carrier (section 11629) and those listed in section 11620. Unless a claimant can show that he is included within the exceptions of any of these three sections, his interest in the vehicle is subject to forfeiture."

The judgment is affirmed.

Shinn, J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1946.