[Civ. No. 17729.   First Dist., Div. One.   Feb. 25, 1958.]

THE PEOPLE, Appellant, v. ONE 1955 CHEVROLET BEL AIR, ENGINE VC550072543, Defendant; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Respondent.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Appellant.

Pillsbury, Madison & Sutro, Francis N. Marshall, Thomas E. Haven and Willis D. Hannawalt for Respondent.

McMURRAY, J. pro tem.*—Several months after The Bank of California, National Association, as legal owner of the defendant vehicle, lent money to Eugene L. Selmi whereby he became the registered owner of the defendant vehicle, it was seized by the state for having been unlawfully used to transport narcotics. The respondent did not dispute the fact and the state proved that the vehicle had been so unlawfully used. The state does not contend that the conditional sale contract between Selmi and Gateway Chevrolet, respondent's assignor, was other than bona fide, or that respondent's interest in the vehicle was created other than without knowledge that the vehicle was or would be used unlawfully.

After a trial before the court without a jury, findings were made that respondent's lien was created after an investigation of the moral responsibility, character and reputation of Selmi and that the investigation was made in good faith and was reasonable in the circumstances. The trial court ordered the seized vehicle forfeited to the state subject to respondent's lien. On this appeal the state contends that under the evidence before it the trial court was in error as a matter of law in finding that respondent's investigation was reasonable under the circumstances. At the time respondent acquired its lien in July, 1955, Health and Safety Code, section 11620, provided as follows: "The claimant of any right, title or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title, or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and

---

*Assigned by Chairman of Judicial Council.

without any knowledge that the vehicle was being, or was to be, used for the purpose charged . . .'' Under the facts presented in this appeal we feel that the section as it stood prior to its amendment in 1955 and as above quoted was the law which governed this action.

In July, 1955, Eugene L. Selmi went to Gateway Chevrolet Company to attempt to purchase a car. He discussed the matter with Mr. Allen, a salesman for that company, and Mr. Allen, finding that Selmi's finances were inadequate to meet the usual requirements of Gateway's source of financing, referred the financing to The Bank of California, as Allen from previous dealings was aware that the bank might finance a purchase on terms which appeared to be feasible for Selmi. Allen filled out a purchaser's credit statement, and because he had not known Selmi before the purchase of the car and because of the uncertain financial status, he visited the Selmi home to verify the information. He did not testify as to the details of the conversation with Selmi's parents but did state that he determined from his investigation that the boy had a ''solid background'' and was convinced that he had a respectable standing in the community. Allen also telephoned the Daly City Water Department to verify Selmi's employment. He testified that the number he used he believed to be the one given him by Selmi. However, it turned out that the number was in fact the number of the ''Selmi Realty Company'' instead of the Water Department at which Selmi worked. The ''Selmi Realty Company'' was owned and operated by Selmi's parents. The number of the company was Plaza 5-5800; whereas the number of the Water Department, Selmi's employer, was Plaza 5-0850.

Allen did not specifically ask anyone relative to Selmi's moral character.

The California Bank also investigated Selmi. One of their representatives personally interviewed him and testified that he felt a personal interview is the best way to avoid obvious moral risks. He further testified that in such an investigation the ''character, capacity and credit'' of an applicant for credit is considered by the bank, and that in his interview with Selmi he had this in mind. The representative of the bank stated that he did not personally check the information given him by Selmi but that the investigation was done under his direction. The personal references given by the purchaser, Selmi, were not checked by the bank, because the representative said that in his experience such references are likely to

mislead the lender. Inquiry made by Mr. Allen revealed that Selmi had been employed for at least a year by Daly City at their Water Department and had good prospects for permanency, that his immediate supervisor at the Water Department had known Selmi for over 20 years and that Selmi had worked for the Water Department "roughly a couple of years" and that his employment was "steady." There is no testimony that any person during the course of this investigation made any direct inquiry as to the moral character of Selmi. The attorney general urges that in the absence of such inquiry the investigation is insufficient as a matter of law to show that a reasonable investigation was made.

The burden of proving that the investigation fulfilled the requirements of Health and Safety Code, section 11620, is on the claimant. (*People* v. *One 1940 Buick 8 Sedan,* 70 Cal.App.2d 542 [161 P.2d 264].) This investigation must be of the moral responsibility, character, and reputation of the purchaser and not limited merely to an inquiry as to his financial standing or credit rating. (*People* v. *One 1953 Pontiac,* 135 Cal.App.2d 195 [286 P.2d 885].) In defining a bona fide investigation the following has been laid down as a criterion: "It would seem that a *bona fide* investigation should, among other essentials, reveal the home address of the prospect, his employer, either past or present, the source of his income, his family or social connections, and as in the case here of a stranger, some inquiry as to his prior location and his standing in that community." (*People* v. *One 1939 Buick 8 Coupe,* 43 Cal.App.2d 411, at 416 [110 P.2d 1013].) In *People* v. *One 1940 Buick 8 Sedan, supra,* at page 548, in discussing the sufficiency of the investigation required by statute, it is said, "1. The defense that the investigation required by the statute has been made is an affirmative defense, and the burden of proof on the issue rests with the claimant.

"2. The question as to whether a proper investigation has been made is one of fact and is to be tested by the legal standards ordinarily applied to such fact questions.

"3. The statute does not prescribe the maximum or minimum of the investigation that must be made. It requires a 'reasonable' investigation of the factors involved. What is reasonable must be governed by the facts of each case.

"4. An investigation into the financial standing or the credit rating of the car purchaser is not sufficient—the law requires an investigation of the 'moral responsibility, character, and reputation of the purchaser.' "

In *People* v. *One 1949 Ford Tudor Sedan,* 115 Cal.App.2d

157 at page 166 [251 P.2d 776], it was said, ". . . whether a sufficient or insufficient inquiry has been made is a question of fact, and generally must be governed by the facts of each case. Subject to the general rules already mentioned, a precise test is impracticable. The best that can be done is to look at the facts and holdings of the decided cases and compare them with the facts of the case involved, so as to ascertain, if possible, by this inductive process, on which side of the line the case involved falls." Many cases have been cited to this court by the parties, but none is absolutely determinative of the question here.

█ In the case at bar it would appear that respondent's investigation, and the results of investigation by others which were conveyed to respondent, included a visit to the purchaser's home, discussion with his parents, a personal interview of the purchaser, and a check on his employment and on his credit standing. From all this respondent could well form an opinion of the purchaser's standing in the community which is some evidence of a person's moral character. Perhaps the basic reason for such investigation was to ascertain whether the purchaser was capable of repaying the loan, but this does not preclude the conclusion that in such investigation some consideration was given to the party's moral character when the testimony of respondent's representative that such was so is remembered. This was highly likely here, since it was a doubtful loan, and it would seem unreasonable that the loan would be extended unless the lender was satisfied as to the purchaser's character and moral standing. From the facts revealed it cannot be said that the finding of the trial court that a reasonable investigation was made is without support.

To require lenders to ask specific questions as to a borrower's morals and particularly as to his use of narcotics might well result in an employer concluding that the lender knew something detrimental to or derogatory about the morals and habits of his employee. It would seem to be of doubtful value to a seller and perhaps extremely detrimental to an employee to have a third person go to an employer and ask, "Does the employee use narcotics?" or "Did he ever use narcotics?" The asking of such a question would be sufficient to raise doubt in the mind of any employer who employed many persons; and it is questionable that a person who did know of one's use of narcotics would answer such a question in the affirmative

because such knowledge would generally be had only by co-participants in such use.

It may be noted in passing that section 11620 of the Health and Safety Code was amended in 1955 to provide: ''The claimant of any right, title or interest in the vehicle may prove his lien, mortgage, or conditional sales contract to be bona fide and that his right, title or interest was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser, and without any knowledge that the vehicle was being, or was to be, used for the purpose charged but, in any case, a reasonable investigation of the moral responsibility, character and reputation of the purchaser or mortgagor shall be deemed to have been made if it was made in good faith and it disclosed and the fact also was that:

'' (a) The purchaser or mortgagor was at the time the holder of any occupational or business license issued by the State of California, or

'' (b) The purchaser or mortgagor was at the time a civil service employee or an employee with tenure of the United States, the State of California or of any political subdivision thereof or of any municipal corporation, or

'' (c) The purchaser or mortgagor was at the time a commissioned or noncommissioned officer of any of the branches of the armed forces of the United States or of the State Militia, or

'' (d) The purchaser or mortgagor, for at least one year immediately prior to the time such right, title or interest was created, had been regularly employed in a legitimate occupation and his present or last employer reports in substance that he is of good moral responsibility, character and reputation,

'' (e) And no facts were known to the claimant or his successor tending to show that the purchaser or mortgagor was not of good moral responsibility, character and reputation.''

It may be seen that under the provisions of the amended section the investigation made by respondent would now be reasonable and sufficient.

Under the facts here disclosed we cannot say as a matter of law that the finding of the court below was erroneous. The judgment appealed from is affirmed.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.